UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ONE11 IMPORTS INC.,<br><br>           Plaintiff,<br><br>    -against-<br><br>NUOP LLC,<br><br>           Defendant. | No. 1:16-cv-7197<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff ONE11 Imports Inc. ("ONE11") for its complaint against defendant Nuop LLC ("Nuop" or "Defendant"), alleges as follows:

### Nature of the Action

1.    ONE11 brings this action for preliminary and permanent injunctive relief and damages against Nuop, which is selling merchandise virtually identical to ONE11's flagship product under a name that is confusingly similar to ONE11's mark and using marketing displays that knock-off ONE11's trade dress, even displaying ONE11's products in Nuop's trade show booths.  ONE11 asserts federal and state claims for trademark infringement and unfair competition, statutory claims for trademark dilution and deceptive trade practices under New York law, and common law claims for trade dress infringement and unjust enrichment.

2.    Since the summer of 2015, ONE11 has been selling a luminous back-lit LED sign and accompanying translucent interchangeable letters, symbols and characters under the trademark "My Cinema Lightbox."  ONE11 undertook marketing efforts to build brand recognition, applied for trademark registrations in the United States and Canada, and sold its My Cinema Lightbox products through online retailers, brick-and-mortar stores throughout North America, and at major trade shows.

3. Unfortunately, the success of the My Cinema Lightbox products spawned a knockoff that now threatens to undermine the substantial goodwill ONE11 has created. With full knowledge of the My Cinema Lightbox mark, and in a deliberate attempt to capitalize on the branding strategy ONE11 has implemented, Nuop began selling the same product under the strikingly similar name "My Marquee Lightbox." Nuop is not only marketing this knockoff using the same channels of trade, but has duplicated ONE11's trade dress copycat displays at booths at major trade shows.

4. Nuop's conduct has caused actual confusion in the marketplace. Absent injunctive relief, ONE11 will continue to suffer irreparable harm to its goodwill, reputation, and business. ONE11's repeated efforts to resolve this matter amicably have been ignored.

## The Parties

5. Plaintiff ONE11 Imports Inc. is a corporation organized under the laws of Canada with its principal place of business located at 238-1173 Dundas Street, Toronto, Ontario, Canada.

6. Upon information and belief, defendant Nuop LLC is a limited liability company organized under the laws of the State of Delaware with a principal place of business located at 310 East 46th Street, New York, New York, 10017.

## Jurisdiction and Venue

7. This Court has original subject matter jurisdiction over ONE11's claims pursuant to the Lanham Act, 15 U.S.C. § 1051 et seq.; and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over the New York state law claims pursuant to 28 U.S.C. § 1367 because such claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8. This Court has personal jurisdiction over Nuop because it is located in and regularly and continuously conducts its business in this forum.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**Facts Common to All Counts**

10. ONE11 is a manufacturer and importer of lighting and giftware products. Among other things, ONE11 sells products it has named "My Cinema Lightbox." These products are luminous backlit LED signs and accompanying translucent plastic letters, numbers, and symbols that allow customers to create their own displays. The signs, which are reminiscent of retro cinema signs, are offered in three different sizes, A4, A5, and A3 – which ONE11 branded as "The Original Cinema Lightbox," the "The Mini Cinema Lightbox," and the "The XL Cinema Lightbox," respectively.

11. The following are depictions of My Cinema Lightbox signs.





12.     My Cinema Lightbox products are advertised, promoted and offered for sale at trade shows, online and in brick-and-mortar stores.  For example, ONE11 has its own website for these products at http://www.mycinemalightbox.com.  Other online retailers include Amazon, Urban Outfitters, Uncommongoods and Vat 19.  ONE11 also maintains a strong social media presence, and has accounts on Instagram, Facebook, Pinterest, and Twitter.  Brick-and-mortar stores carrying My Cinema Lightbox are located throughout Canada and the United States, coast to coast.  The products are in stores in Alabama, Arizona, California, Colorado, Georgia, Illinois, Indiana, Iowa, Kentucky, Missouri, New York, New Jersey, North Carolina, Oklahoma, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia and Washington.

13.     In the United States, ONE11 filed a trademark application for registration of My Cinema Lightbox with the United States Patent and Trademark Office ("PTO").  Although the PTO has not yet registered the mark, it has found that registration is not barred by any previously filed applications or registrations, and has not raised any objection to the mark's distinctiveness.

14.     My Cinema Lightbox is both ONE11's flagship product, and the impetus for the company's formation.  In February 2015, ONE11 founder Andrea Banyai met with an

acquaintance in London named Richard Hinton, who owns a lighting and giftware business in the United Kingdom named Locomocean Ltd.

15.     Mr. Hinton informed Ms. Banyai that he had found a factory in China that was producing backlit LED signs, which he wanted to bring to market in the United Kingdom. Because the factory required a minimum order quantity, Mr. Hinton and Ms. Banyai agreed to place a joint order for the product from a Chinese factory.

16.     In doing so, they agreed that Ms. Banyai would incorporate a company to sell the products in the United States and Canada, and Locomocean Ltd would distribute them in the United Kingdom. Accordingly, ONE11 was incorporated on February 14, 2015; the company placed its first order for lightboxes a few months later, in the spring of 2015.

17.     ONE11 employees spent the summer of 2015 creating designs, artwork, fonts, and icons for the translucent characters to be used with the backlit sign. ONE11 named the products "My Cinema Lightbox," and named its A4 size "The Original Cinema Lightbox."

18.     In addition, ONE11 developed a strategy to maximize the new brand's recognition. Specifically, ONE11 promoted My Cinema Lightbox on Facebook, Instagram, and Pinterest, and took search engine optimization measures to drive traffic. ONE11 also invested in paid advertisements online and in print media, and hired public relations companies in the United States and Canada to expand the brand's reach.

19.     By August 2015, ONE11 had finished the creation of its designs and artwork. It launched its website http://www.mycinemalightbox.com and www.one11imports.com, its Pinterest account @mycinemalightbox, its Facebook account, and its Instagram account www.instagram.com/mycinemalightbox on or about August 27, 2015.

20.     When the first shipment arrived from the factory in China, ONE11 began shipping sold products to customers in the United States and Canada.

21.     ONE11 took care to brand its products, even going so far as to place a My Cinema Lightbox logo sticker by hand on every product that shipped to ensure consumer recognition of the brand.

22.     By September, ONE11 had sold its entire inventory.  Accordingly, ONE11 placed another order through Mr. Hinton, who was acting as the "agent" for the factory, for the backlit signs and accompanying letters.  Significantly, because ONE11 had developed its own unique fonts, icons and symbols, ONE11 also submitted that original artwork with its order.  ONE11 informed Mr. Hinton that these designs were exclusively for use by My Cinema Lightbox branded products.

23.     ONE11 received its second order from the factory in December 2015, and began filling backorders to customers in both Canada and the United States.  Because of the rapid pace of sales and the success My Cinema Lightbox had enjoyed thus far, ONE11 placed another order, which included two new sizes of lightbox – the A5, which ONE11 named "The Mini Cinema Lightbox," and  the A3, which ONE11 named"The XL Cinema Lightbox."   ONE11 also ordered a colored version of the letter pack in the font ONE11 had previously designed, a symbol pack, and a letter pack called the Wilderness Pack, in a new font ONE11 licensed.

24.     In February 2016, at the NYNOW trade show at the Javits Center in New York City, Ms. Banyai discovered that Nuop was displaying ONE11's My Cinema Lightbox products in Nuop's booth.  Ms. Banyai recognized the products as My Cinema Lightbox because they were using the proprietary artwork ONE11 had submitted with its previous order.  Nuop was offering

to sell the products as if they were its own. ONE11 had not, in any way, authorized this conduct. Photographs of Nuop's booth and its unlawful display of ONE11's products are here:



25.   Ms. Banyai confronted Nuop's representatives on the spot, informing them that the My Cinema Lightbox mark and its designs are proprietary and that Nuop was not authorized to sell them. Nuop's claimed that it had not decided whether to offer the product for sale.

26.   ONE11 discovered in April 2016 that Nuop had approached two of its large retail customers with mock-up marketing materials of My Cinema Lightbox. Nuop had re-branded them

7

with the name "My Marquee Lightbox," and was offering the products at a significantly lower price.

27. Some months later, ONE11 discovered through an online search that Nuop was offering Nuop's products through Groupon, but using photographs of My Cinema Lightbox products in its offer. ONE11 recognized the product as My Cinema Lightbox because the fonts and symbols shown in the Groupon offer were the ones developed by ONE11. Exhibit A is a screenshot of Nuop's Groupon offer. The first two photographs in the offer are of the My Cinema Lightbox.

28. In an effort to prevent Nuop's knockoffs from reaching the market, ONE11 confronted the Chinese factory that supplied the My Cinema Lightbox product. The factory agreed that ONE11 would be the exclusive agent or distributor for North America and all sales inquiries and orders would, from that point on, go through ONE11. ONE11 placed its next order directly with the factory.

29. ONE11 promptly consulted counsel to try to stop Nuop from taking and using its property.

30. On advice of counsel, on July 7, 2016, counsel sent a demand letter to Nuop alleging trademark infringement and passing off. (Exhibit B.) Nuop never responded.

31. ONE11's counsel also alerted ONE11's major retailers that someone else was improperly distributing products very similar to its own and infringing on its intellectual property. (Exhibit C.)

32. In July 2016, ONE11 was an exhibitor at a trade show in Atlanta named AmericasMart Home & Gift Show. ONE11 arrived days in advance to prepare its trade show booth display.

33. Because of the broad reach of this trade show and the potential to generate significant interest in ONE11's product, ONE11 expended time and resources publicizing the My Cinema Lightbox brand at the show, purchasing advertising in the form of brochures and podium stands.

34. ONE11 also developed the look and feel of its trade show booth. Specifically, because the My Cinema Lightbox brand was inspired by old-fashioned movie theater displays, ONE11 adopted a distinctive display including mounting the My Cinema Lightbox products on black handpainted walls, surrounded by a white vinyl border and letters. ONE11 also chose distinctive sayings and phrases for the My Cinema Lightbox examples on display, such as "YES I CAN." A photograph of ONE11's booth display at the Atlanta trade show is here:



35. On the day before the show was to open to the public, Nuop arrived at the trade show, surveyed ONE11's booth and then purchased materials to copy ONE11's booth design. The similarities were striking – Nuop mounted its knockoff product on black foam core walls, with white letters on them. Nuop also copied the size descriptions of the product that ONE11 used, changing the size designations from "A4," "A5," and "A3" to "Large," "Small," and "Mini." Prominently displayed on Nuop's booth was the name it had selected for its product: "My Marquee Lightbox." Nuop's copycat booth was set up just two booths in front of ONE11's booth. Photographs of Nuop's booth at the Atlanta trade show are here:





36. As a result, customers at the Atlanta trade show confused Nuop with ONE11. A number of customers ordered lightboxes from Nuop and, when they saw ONE11's display and realized their confusion and mistake, cancelled their Nuop orders and placed orders for My Cinema Lightbox instead.

37. For example, a buyer from a company called Love Street approached ONE11 at the Atlanta trade show with ONE11's advertisement in hand, asking if ONE11 sold My Cinema Lightbox. This buyer informed ONE11 that she had seen its advertisement, but had just mistakenly placed an order with Nuop. The buyer explained that she walked by Nuop's booth first, believed it was ONE11's product, and placed the order through Nuop. When ONE11's representatives explained that ONE11 was, in fact, the originator of the product, the Love Street buyer cancelled her order with Nuop.

38. Other trade show attendees approached ONE11 to inquire about its advertising, and did not realize that Nuop was a different company. These customers indicated a belief that ONE11 and Nuop were affiliated, or the same business. At least one customer stated that she realized that

there were some packaging differences, but believed that Nuop was associated with ONE11 because Nuop, too, used "My" and "Lightbox" in the name of its product.

39. ONE11 confronted Nuop. Notwithstanding Ms. Banyai's prior interaction with Nuop's representative at the NYNOW trade show, when she made Nuop aware of the My Cinema Lightbox mark, and ONE11's cease and desist letter, Nuop disclaimed knowledge of ONE11.

40. In an effort to avoid a legal dispute, ONE11 asked Nuop to rebrand its remaining inventory and submitted a proposal. Despite ONE11's repeated follow-up efforts, Nuop never responded.

41. In August 2016, at the Toronto Gift Fair, ONE11 discovered that a Canadian distributor was selling Nuop's knockoff products under the My Marquee Lightbox name.

42. Customers at this trade show, too, were confused and raised the issue of the knockoff products with ONE11.

43. In August, ONE11 was an exhibiter at the Las Vegas World Markets Gift Show. ONE11's booth was, again, in close proximity to Nuop's booth. As in Atlanta, ONE11's employees arrived first and set up its booth display; ONE11 used the same distinctive composition and design as it had in Atlanta to bolster its brand recognition. (Exhibit D.) ONE11 also purchased advertisements in the trade show materials. When Nuop arrived the day before the show, it again copied ONE11's booth design – this time, reversing the color scheme. (Exhibit E.) What's more, Nuop copied ONE11's displayed lightbox, on which ONE11 had written, "YES I CAN."

44. As in Atlanta and Toronto, customers in Las Vegas were confused. Some ordered lightboxes from Nuop's booth, only to cancel those orders and order from ONE11 when they realized their mistake.

45.     For example, Mary Liz, the owner of a retailer named Lulu & Leon, visited the ONE11 booth in Las Vegas, and informed ONE11's representatives that she had seen ONE11's advertisement in the trade show materials, but was confused and had accidentally placed an order with Nuop.  She emailed Nuop on the spot and cancelled her order.

46.     Later in August, at the NYNOW trade show at the Javits Center, ONE11's products were exhibited at another company's booth at ONE11's request.  Nuop was showing its knockoff lightboxes in its booth.  When confronted, Nuop said it would follow up on ONE11's earlier proposals about resolving the matter amicably.  Nuop has not done so.

47.     ONE11 has suffered irreparable harm and will continue to do so if Nuop's conduct is not stopped.   Among other things, there is confusion in the relevant marketplace, its trademark has been infringed and diluted, customers are buying Nuop's products believing that Nuop is authorized or sponsored by ONE11, or associated with ONE11 and authorized to sell ONE11's products, and ONE11 has had to engage legal counsel.   ONE11 has lost control over use of its intellectual property.

48.     All of this jeopardizes ONE11's very existence, a start up facing what could be insurmountable problems caused by Nuop's intentional unfair and illegal actions.  Money damages alone will not stop Nuop's conduct and remedy the harm it is causing.

49.     As a direct and proximate result of Nuop's unlawful acts, Nuop has suffered and will continue to suffer damages in an amount that is not presently ascertainable but will be established at trial.

50.     Nuop has misappropriated ONE11's property rights as well as the goodwill associated therewith.

51. The acts of Nuop alleged herein were committed willfully, with full knowledge of ONE11's rights and with the intention of deceiving and misleading the public and causing harm to ONE11. Unless restrained and enjoined by this Court, such conduct will permit Nuop to gain an unfair competitive advantage over ONE11 and permit Nuop to be unjustly enriched and enjoy the interest and goodwill ONE11 has developed.

52. Unless enjoined by this Court, the acts of Nuop complained of herein will cause ONE11 to suffer further irreparable harm, continue to cause irreparable harm to the distinctiveness of its trademark and trade dress and to the goodwill and business reputation associated with ONE11's trademark and other intellectual property. There is no adequate remedy at law for these actions.

## COUNT I

Trademark Infringement and Unfair Competition – Lanham Act § 43(a), 15 U.S.C. § 1125(a)

53. ONE11 incorporates by reference each and every allegation contained above as though fully set forth herein.

54. ONE11's trademark is valid and entitled to protection.

55. The acts of Nuop alleged herein are likely to cause confusion, mistake, or deception among consumers or potential consumers as to the source or origin of defendant's products and services, and the sponsorship or endorsement of those products and services by ONE11 or as to the affiliation, connection or association of defendant or its product with plaintiff or its products or activities.

56. The actions of Nuop constitute trademark infringement, false designation of origin and false and misleading representations and other acts of unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT II

<u>Unfair Competition and Trademark Infringement Under New York Common Law</u>

57. ONE11 incorporates by reference each and every allegation contained above as though fully set forth herein.

58. ONE11 owns a valid and legally protectable trademark My Cinema Lightbox, which it uses and advertises to identify its goods and services. My Cinema Lightbox identifies ONE11 as the source of goods and services marketed under the mark and has come to represent the valuable goodwill owned by ONE11.

59. ONE11's trade show booths and other promotional and marketing efforts described herein also represent ONE11's trade dress. Nuop's use of "My Marquee Lightbox" and its copying of the distinctive look and feel of ONE11's trade show booths create a likelihood of confusion among consumers.

60. Nuop's complained of conduct also misappropriates the skill, expenditure and labors of ONE11 without ONE11's permission and constitutes common law trademark infringement and unfair competition.

61. Nuop's use of "My Marquee Lightbox" and its copying the look and feel of ONE11's trade booth shows were knowing, intentional, deliberate, and in bad faith.

## COUNT III

<u>Deceptive Trade Practices in Violation of N.Y. Gen. Bus. Law §§ 349 and 350</u>

62. ONE11 incorporates by reference each and every allegation contained above as though fully set forth herein.

63. Defendant's commercial use of "My Marquee Lightbox" and its copycat trade show booths and other conduct described above are likely to mislead a reasonable consumer. Such

conduct represents a deliberate attempt to mislead consumers because defendant is causing a likelihood of confusion or of misunderstanding as to defendant's goods and services, having a source in or the sponsorship, approval or certification of plaintiff, or is being affiliated, connected or associated with plaintiff, and are otherwise engaging in conduct which creates a likelihood of confusion between the parties' products and services.  This creates misunderstandings of the source of defendant's products and services as being ONE11's products and services.

64. Nuop's acts are misleading in a material way.  Such acts are directed at consumers and they have injured ONE11.  These actions deliberately attempt to deceive the consuming public, and, as such, implicate the general public interest.

65. Nuop's conduct constitutes deceptive acts and business practices and false advertising in violation of New York's General Business Law.

## COUNT IV

### Trade Dress Infringement under New York Common Law

66. ONE11 incorporates by reference each and every allegation contained above as though fully set forth herein.

67. Nuop's deliberate efforts to copy the design and appearance of the materials used by ONE11 to present its My Cinema Lightbox product to prospective purchasers in its trade show booths constitutes trade dress infringement under New York law.

68. ONE11's trade dress is inherently distinctive:  ONE11 has designed its trade show booths to feature its products mounted on black handpainted walls, surrounded by white vinyl lettering and borders.

69. Nuop copied each distinctive element of ONE11's trade dress.  In addition, Nuop copied the phrases ONE11 displayed on its products in its trade booths.

70. Nuop's deliberate and intentional copying of ONE11's distinctive trade dress created a likelihood of confusion between its "My Marquee Lightbox" product and ONE11's My Cinema Lightbox products.

## COUNT V

New York Dilution Statute – N.Y. Gen. Bus. Law § 360

71. ONE11 incorporates by reference each and every allegation contained above as though fully set forth herein.

72. ONE11's trademark "My Cinema Lightbox" is distinctive and fully protectable.

73. Nuop began use of "My Marquee Lightbox" after ONE11's use of "My Cinema Lightbox."

74. Nuop's use of its substantially similar mark, without authorization from ONE11, is likely to dilute the distinctive quality of ONE11's trademark and to decrease the capacity of the mark to identify and distinguish ONE11's products and services, and is likely to cause harm to ONE11's business and its reputation.

75. The acts alleged herein constitute trademark dilution in violation of the New York law.

## COUNT VI

Unjust Enrichment under New York law

76. ONE11 incorporates by reference each and every allegation contained above as though fully set forth herein.

77. Nuop's actions are wrongful and unfair. Nuop has been enriching itself at ONE11's expense. It is against good equity and conscience to permit Nuop to retain the revenues it has received from such wrongful conduct and, instead, ONE11 should recover those revenues.

78. Nuop would be unjustly enriched if allowed to reap the benefits from such wrongful conduct. Accordingly, ONE11 should prevail on a common law unjust enrichment claim.

## PRAYER FOR RELIEF

WHEREFORE, ONE11 requests that judgment be entered in its favor and against Nuop as follows:

1. Declaring that Nuop's unauthorized use of "My Marquee Lightbox" is likely to dilute and infringe ONE11's distinctive "My Cinema Lightbox" trademark;

2. Declaring that Nuop's complained of activities including its adoption of a substantially similar trademark and copying ONE11's trade show booths constitute unfair competition, deceptive trade practices and, if not stopped, would unjustly enrich Nuop at ONE11's expense;

3. Declaring that Nuop's conduct was knowing, intentional and willful;

4. Preliminarily and permanently enjoining Nuop, its successors, officers, agents and employees, and anyone acting in active concert or participation with or at the behest or direction of any of them, from:

a) Using (including, but not limited to, in connection with the promotion, marketing, advertising and sale of products or services) "My Marquee Lightbox", "My Cinema Lightbox" or any colorable imitation thereof, including but not limited to "My Marquee" or "My Cinema" or any other variation of either which begins with "My", or any otherwise dilutive or confusingly similar mark in its advertising, marketing, promotions and otherwise including print, website and online;

b) Copying ONE11's trade show booths including but not limited to the ways in which it has done so in the past set forth above;

c)      doing any other act or thing likely to confuse, mislead or deceive others into believing that Nuop, or its products and services, are connected with, sponsored by or approved by ONE11; and

d)      engaging in any other activity constituting unfair competition with ONE11 or constituting infringement or dilution of ONE11's rights in and to its "My Cinema Lightbox" trademark and other intellectual property.

5.      Ordering that all signage, advertisements, labels, prints, packages, wrappers and receptacles in the possession of Nuop bearing "My Marquee Lightbox" or "My Cinema Lightbox" or any colorable imitation thereof, including but not limited to "My Marquee" or "My Cinema" or any other variation of either which begins with "My", be destroyed, and that such names be removed from all Internet websites, online advertising, marketing, promotions or other online materials, pursuant to 15 U.S.C. § 1118;

6.      Order Nuop, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve on ONE11's counsel within 30 days after service of the injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Nuop has complied with the injunction;

7.      Directing an accounting to determine Nuop's profits resulting from its unlawful activities;

8.      Awarding ONE11 compensation for any and all damages, injury or harm pursuant to 15 U.S.C. § 1117 and New York law;

9.  Ordering full restitution and/or disgorgement of all profits and benefits that may have been obtained by ONE11 as a result of its wrongful conduct pursuant to 15 U.S.C. § 1117;

10. Awarding ONE11 punitive and exemplary damages as permitted by New York law;

11. Assessing ONE11's cost of this action and ONE11's attorneys' fees against Nuop pursuant to 15 U.S.C. § 1117 and New York law; and

12. Ordering or awarding any other such relief that the Court deems just and proper.

### DEMAND FOR JURY TRIAL

ONE11 hereby makes a demand pursuant to Federal Rule of Civil Procedure 38 for a trial by jury on all issues triable to a jury.

Dated: September 15, 2016
New York, New York                    ZEISLER PLLC

                                      By: /s/  Mark N. Mutterperl
                                          Mark N. Mutterperl
                                          Meghan H. Sullivan
                                          750 Third Avenue, 9th Floor
                                          New York, New York 10017
                                          (212) 671-1921

                                          *Attorneys for Plaintiff ONE11 Imports Inc*