UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ONE11 IMPORTS INC.,

               Plaintiff,

         -against-

NUOP LLC,

             Defendant.

Civil Action No. 1:16-cv-7197 (JPO)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

ZEISLER PLLC

Mark N. Mutterperl
Meghan H. Sullivan
750 Third Avenue, 9th Floor
New York, New York 10017
(212) 671-1921

*Attorneys for Plaintiff ONE11 Imports Inc.*

TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................. 1

**STATEMENT OF FACTS** ...................................................................................................... 3

**ARGUMENT** ...................................................................................................................... 11

I.      ONE11 IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS ................ 12

      A.      <u>ONE11 Is Likely To Succeed On Its Trademark Infringement Claims</u>............ 12

          1.      *ONE11's Trademark is Valid and Entitled to Protection* ..................... 12

          2.      *Defendant's Bad Faith Copying of ONE11's Mark is Presumed to Cause Confusion, and Has Actually Caused Consumer Confusion* ................ 14

          3.      *The <u>Polaroid</u> Factors Militate in Favor of ONE11* .............................. 16

      B.      <u>ONE11 Is Likely To Prevail On Its Unfair Competition Claims</u>...................... 18

      C.      <u>ONE11 Is Likely To Prevail On Its Trade Dress Infringement Claims Under New York Law</u> ....................................................................................................... 19

      D.      <u>ONE11 Is Likely To Prevail On Its Claim Under The New York Dilution Statute</u> ............................................................................................................ 21

II.     ONE11 WILL CONTINUE TO SUFFER IRREPARABLE HARM IF NUOP IS NOT ENJOINED ............................................................................................................ 22

III.    ONE11 HAS RAISED SERIOUS QUESTIONS ON THE MERITS OF ITS CLAIMS AND THE BALANCE OF HARDSHIPS TIPS IN ITS FAVOR................................. 23

**CONCLUSION** ................................................................................................................... 25

TABLE OF AUTHORITIES

**Cases**

Am. Home Prods. Corp. v. Johnson Chem. Co., 589 F.2d 103 (2d Cir. 1978) ........................... 15

Am. Ort, Inc. v. Israel, 2007 WL 20449733 (S.D.N.Y. July 17, 2007)....................................... 16

Bath and Body Works Brand Mgmt., Inc. v. Summit Enter., LLC, 7 F.Supp.3d 385 (S.D.N.Y. 2014).................................................................................................................................... 22

Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033 (2d Cir. 1992) ...................... 13

Carson Optical, Inc. v. Prym Consumer USA, Inc., 11 F.Supp.3d 317 (E.D.N.Y. 2014)........... 20

Centaur Comm's, Ltd. v. A/S/M Comm's, Inc. 830 F.2d 1217 (2d Cir. 1987)........................... 19

Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206 (2d Cir. 2012) ................................................................................................................................... 12

Courtenay Comms. Corp. v. Hall, 334 F.3d 210 (2d Cir. 2003).................................................. 13

Deere & Co. v. MTD Products, Inc., 41 F.3d 39 (2d Cir. 1994) ................................................. 21

Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110 (2d Cir. 2009) ............................. 22

Federal Express Corp. v. Federal Espresso, Inc., 201 F.3d 168 (2d Cir. 2000).......................... 11

Friesland Brands, B.V. v. Vietnam Nat. Milk Co., 228 F.Supp.2d 399 (S.D.N.Y. 2002)........... 17

Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993 (2d Cir. 1997)................... 11, 20

Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993) ..................... 13

GTFM, Inc. v. Solid Clothing, Inc., 215 F. Supp. 2d 273 (S.D.N.Y. 2002)......................... 16, 21

Guinness United Distillers & Vitners B.V. v. Anheuser-Busch, Inc. 64 U.S.P.Q. 1039 (S.D.N.Y. 2002)................................................................................................................................... 14

Innovation Ventures, LLC v. Ultimate One Dist. Corp., --- F.Supp.3d ----, 2016 WL 1273232 (E.D.N.Y. Mar. 31, 2016)................................................................................................... 18

Kregos v. Associated Press, 795 F.Supp. 1325 (S.D.N.Y. 1992) ............................................... 18

Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337 (2d Cir. 1999)................. 14

Louis Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F.Supp.3d 485 (S.D.N.Y. 2015)......... 14

Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108 (2d Cir. 2006)...................... 14

Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532 (2d Cir. 2005).......... 11, 24

Marks Org., Inc. v. Joles, 784 F.Supp.2d 322 (S.D.N.Y. 2011) .................................................... 23

McDonald's Corp. v. McBagel's, Inc., 649 F.Supp. 1268 (S.D.N.Y. 1986) ............................... 14

Morningside Grp. Ltd. v. Morningside Capital Grp., LLC, 182 F.3d 133 (2d Cir. 1999)........... 18

New York Stock Exchange, Inc. v. New York, New York Hotel LLC, 293 F.3d 550 (2d Cir. 2002)....................................................................................................................................... 22

N.Y. City Triathlon v. NYC Triathlon Club, Inc., 704 F.Supp.2d 305 (S.D.N.Y. 2010)............ 23

N.Y. State Society of Cert. Public Accountants v. Eric Louis Assocs., Inc., 79 F.Supp.2d 331 (S.D.N.Y. 1999)....................................................................................................................... 15

NYP Holdings v. New York Post Pub. Inc., 63 F.Supp.3d 328, 341 (S.D.N.Y. 2014)............... 22

Nike Inc. v. Top Brand Co. Ltd., 2005 WL 1654859 (S.D.N.Y. Jul. 13, 2005)......................... 21

Paddington Corp. v. Attiki Importers & Distribs, Inc., 996 F.2d 577 (2d Cir. 1993)............ 14, 20

Perfect Fit Indust., Inc. v. Acme Quilting Co., Inc., 618 F.2d 950 (2d Cir. 1980) ...................... 20

Philip Morris USA Inc. v. Felizardo, 2004 WL 1375277 (S.D.N.Y. June 18, 2004)................ 19

Polaroid Corp. v. Polaroid Elecs. Corp., 287 F.2d 492 (2d Cir. 1961)........................................ 16

Power Test Petroleum Distribs. v. Calcu Gas, Inc., 754 F.2d 91 (2d Cir. 1985)........................ 23

Ritani LLC v. Aghjayan, 880 F.Supp.2d 425 (S.D.N.Y. 2012).................................................... 18

Savin Corp. v. Savin Group, 391 F.3d 439 (2d Cir. 2004) .......................................................... 17

Silberstein v. Fox Entertainment Group, Inc., 424 F.Supp.2d 616 (S.D.N.Y. 2004) .................. 12

Simon & Schuster, Inc. v. Dove Audio, Inc., 970 F.Supp. 279 (S.D.N.Y. 1997) ........................ 15

Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97 (2d Cir. 2009).................... 17, 21

Stuart v. Collins, 489 F.Supp. 827 (S.D.N.Y. 1980) .................................................................. 15

Tactica Int'l, Inc. v. Atlantic Horizon Intern., Inc., 154 F.Supp.2d 586 (S.D.N.Y. 2001) ..... 12, 13

Tom Doherty Assoc. v. Saban Entm't, Inc., 60 F.3d 27 (2d Cir.1995)..........................................23

Toys "R" Us Inc. v. Abir, 45 U.S.P.Q.2d (BNA) 1944 (S.D.N.Y. 1997)....................................16

Tri-Star Pictures, Inc. v. Unger, 14 F.Supp.2d 339 (S.D.N.Y. 1998)...........................................19

Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992) ...........................................12, 14

Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205 (2000) ...........................................13

Warner-Lambert Co. v. Northside Devel. Corp., 86 F.3d 3 (2d Cir. 1996).................................24

Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc., 698 F.2d 862 (7th Cir. 1983).. 24

Winner Int'l LLC v. Omori Enters., Inc., 60 F.Supp.2d 62 (E.D.N.Y 1999) ..............................13

Zino Davidoff SA v. CVS Corp., 571 F.3d 238 (2d Cir. 2009)....................................................11

**Statutes**
N.Y. Gen. B. L. § 360-l (1996)....................................................................................................23
15 U.S.C. § 1125(a) .....................................................................................................................12

**Treatises**
REST. (THIRD) OF UNFAIR COMPETITION § 16 (1995) ................................................................20

Plaintiff ONE11 Imports Inc. ("ONE11") submit this Memorandum of Law in support of its motion pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction against Nuop LLC ("Nuop").

## PRELIMINARY STATEMENT

This motion seeks to stop the consumer confusion intentionally caused by Nuop, which is selling merchandise that is virtually identical to ONE11's flagship product, using a name that is confusingly similar to ONE11's trademark, and copying the look and feel of ONE11's trade show booths.

ONE11 is a start-up business that, since the summer of 2015, has been selling a luminous back-lit LED sign and accompanying translucent letters, symbols and characters under the trademark "My Cinema Lightbox."  Due in large part to ONE11's extensive branding efforts, My Cinema Lightbox has been extremely successful and has enjoyed strong sales across the United States and Canada.  However, this success has spawned Nuop's knockoff, which threatens to undermine the substantial goodwill ONE11 has created and is causing irreparable harm to ONE11.

Nuop has attempted to co-opt the My Cinema Lightbox products as its own by offering to sell the same product in the same market under the confusingly similar name "My Marquee Lightbox."  Moreover, Nuop has marketed its knockoff to trade show attendees in a display that copies ONE11's trade show booth presentation – in one case, presenting a My Cinema Lightbox in Nuop's booth *as its own product*.  These brazen acts are intended to capitalize on the branding strategy ONE11 has painstakingly implemented for My Cinema Lightbox and the goodwill it has developed, and to create confusion in the minds of consumers intending to purchase ONE11's product.

Unfortunately for ONE11, Nuop has succeeded.  As described more fully herein, ONE11 has fielded inquiries from customers who mistakenly placed orders for a My Marquee Lightbox, believing that they were purchasing the My Cinema Lightbox.  On multiple occasions, potential consumers have approached ONE11's trade show booths to express their confusion over Nuop's display – and to question ONE11 on whose product is the "knockoff."

ONE11 has made repeated efforts to protect its property, including directing a cease-and-desist letter to Nuop, alerting major retail customers of the knockoff products, and proposing an amicable resolution involving the rebranding of Nuop's product.  Despite these measures, Nuop has persisted in its unfair conduct.

Nuop's conduct is a classic case of trademark infringement and unfair competition under federal and New York state law.  The My Cinema Lightbox trademark is unquestionably entitled to protection, and Nuop's deliberate use of a confusingly similar name has caused and is likely to cause confusion in the marketplace.  Indeed, given Nuop's intentional copying of ONE11's trademark and trade show booth trade dress, a likelihood of confusion is presumed as a matter of law.  In fact, Nuop's efforts to copy ONE11's branding strategy through its use of the My Marquee Lightbox name and its virtually identical displays at numerous trade shows has already caused actual confusion among consumers.  Moreover, Nuop's conduct constitutes dilution of ONE11's distinctive trademark.  By using a substantially similar name, together with its predatory intent to associate its product with My Cinema Lightbox, Nuop is blurring ONE11's trademark.

As a result, ONE11 is suffering irreparable harm to its business, brand, and reputation. After devoting substantial time and resources to building its brand, ONE11 faces the prospect of having My Cinema Lightbox's brand recognition coopted by a competitor attempting to ride the

coattails of ONE11's success.   Absent an injunction preventing Nuop's further use of the confusingly similar name My Marquee Lightbox and its copying ONE11's trade show booth displays, ONE11's very existence will continue to be jeopardized.

## STATEMENT OF FACTS

### ONE11 and My Cinema Lightbox

ONE11 is a Canadian manufacturer and importer of lighting and giftware products headquartered in Toronto, Canada.   See Declaration of Andrea Banyai ("Banyai Decl.") at ¶¶ 3-4.   ONE11 is a start-up business founded in February 2015 by partners Andrea Banyai and Andrew Paprocki. Id. ¶ 7.   ONE11's flagship product is My Cinema Lightbox, a luminous LED sign and translucent interchangeable plastic letters, numbers, and symbols for use with the backlit sign.   Id. ¶ 4.   The signs, which are reminiscent of retro cinema signs, allow users to create and display their own individualized phrases.   See Banyai Decl. ¶ 5.

My Cinema Lightbox is not only ONE11's feature product, it is the reason ONE11 was founded.   Id. ¶ 8.   In February 2015, founder Andrea Banyai met with an acquaintance in London named Richard Hinton, who owns a lighting and giftware business in the United Kingdom named Locomocean Ltd.   Id.   Mr. Hinton informed Ms. Banyai that he had found a factory in China that was producing backlit LED signs, which he wanted to bring to market in the United Kingdom.   Id.   Because the factory required a minimum order quantity, Mr. Hinton and Ms. Banyai agreed to place a joint order for the product from a Chinese factory.   In doing so, they agreed that Ms. Banyai would incorporate a company to sell the goods in the United States and Canada, and Locomocean Ltd would distribute them in the United Kingdom.   Id.   Accordingly, ONE11 was incorporated on February 14, 2015; the company placed its first order for lightboxes a few months later, in the spring of 2015.   Id.

**ONE11's Branding Efforts for My Cinema Lightbox**

In anticipation of the product launch, ONE11 employees spent the summer creating designs, artwork, fonts, and icons for the translucent characters to be used with the backlit sign. Id. ¶ 9.  ONE11 named the product My Cinema Lightbox, and named the size offered, known as the A4, "The Original Cinema Lightbox."  Id.  In addition, ONE11 developed a strategy to maximize the new brand's recognition.  Specifically, ONE11 promoted My Cinema Lightbox on Facebook, Instagram, and Pinterest, and took search engine optimization measures to drive traffic.  ONE11 also invested in paid advertisements online and in print media, and hired public relations companies in the United States and Canada to expand the brand's reach.

By August 2015, ONE11 had finished the creation of its designs and artwork.  Id. ¶ 10.  It launched its websites http://www.mycinemalightbox and www.one11imports.com, its Pinterest account @mycinemalightbox, its Facebook account, and its Instagram account www.instagram.com/mycinemalightbox.  Id.  When the first shipment arrived from the factory in China, ONE11 began shipping sold products to customers in the United States and Canada.  Id.

ONE11 took special care to protect its product, even going so far as to place a My Cinema Lightbox logo sticker by hand on every product that shipped to ensure consumer recognition of the brand.  Id. ¶ 12.  These branding efforts contributed to the rapid expansion of the customer base for My Cinema Lightbox.  Today, My Cinema Lightbox products are advertised, promoted and offered for sale at trade shows, as well as online and in brick-and-mortar stores.  Id. ¶ 6.  In addition to the dedicated website ONE11 manages at http://www.mycinemalightbox.com, My Cinema Lightbox is also offered by other online retailers such as Amazon, Urban Outfitters, Uncommongoods and Vat 19.  Id.  ONE11 maintains

a strong social media presence with My Cinema Lightbox-branded accounts on Instagram, Facebook, Pinterest, and Twitter.  Id.  Brick-and-mortar stores carrying My Cinema Lightbox are located throughout Canada and the United States, including Alabama, Arizona, California, Colorado, Georgia, Illinois, Indiana, Iowa, Kentucky, Missouri, New York, New Jersey, North Carolina, Oklahoma, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia and Washington.  Id.

### My Cinema Lightbox Enjoys Strong Initial Sales

By September, ONE11 had sold its entire inventory.  Id. ¶ 11.  Accordingly, ONE11 placed another order through Mr. Hinton, who was acting as the "agent" for the factory, for the backlit signs and accompanying letters.  Id.  Significantly, because ONE11 had developed its own unique fonts, icons and symbols, ONE11 also submitted that original artwork with its order. Id.  Mr. Hinton understood that these designs were exclusively for use by My Cinema Lightbox branded products.

ONE11 received its second order from the factory in December 2015, and began filling backorders to customers in both Canada and the United States.  Id. ¶ 13.  Because of the rapid pace of sales and the success My Cinema Lightbox had enjoyed thus far, ONE11 placed another order, which included two new sizes of lightbox – the A5, which ONE11 named "The Mini Cinema Lightbox," and the A3, which ONE11 named "The XL Cinema Lightbox."  Id.  ONE11 also ordered a colored version of the letter pack in the font ONE11 had previously designed, a symbol pack, and a letter pack called the Wilderness Pack, in a new font ONE11 licensed.  Id.

To help protect its trademark, ONE11 registered "My Cinema Lightbox" with the Office of the Registrar of Trademarks in the Canadian Intellectual Property Office in January 2016.  Id. ¶ 14.  In addition, ONE11 filed a trademark application with the United States Patent and

Trademark Office ("PTO") for registration of My Cinema Lightbox.  Id. ¶ 22.  Although the PTO has not yet registered the mark, it has found that registration is not barred by any previously filed applications or registrations, and has not raised any objection to the distinctiveness of the My Cinema Lightbox mark.  Id.

**Nuop's Unfair Actions**

In February 2016, Ms. Banyai attended the NYNOW trade show at the Jacob Javits Center in New York City in order to determine whether ONE11 should be an exhibitor at the August 2016 NYNOW trade show.  Id. ¶ 15.  While touring the trade show, Ms. Banyai discovered My Cinema Lightbox products displayed in a booth owned by Nuop LLC.  See Banyai Decl. Ex. 1.  Ms. Banyai recognized the product as a My Cinema Lightbox because the fonts and symbols being used were the ones developed by ONE11.  Id. ¶ 15.  In addition, Nuop's booth displayed The Mini Cinema Lightbox, which had been developed by the factory supplying ONE11, and which was not sold anywhere else in the world.  Id.  Nuop was offering to sell the products as if they were its own.  Id. ¶ 16.

Ms. Banyai immediately confronted Nuop.   Nuop claimed it had not decided whether to offer the product for sale. Id.  Notwithstanding Nuop's statements, ONE11 discovered in April 2016 that Nuop had approached two of its large retail customers with mock-up marketing materials of My Cinema Lightbox.  Id. ¶ 17.  Nuop had re-branded them with the name "My Marquee Lightbox," and was offering the products at a significantly lower price than ONE11 was.  Id.  In order to preserve these customers, ONE11 was forced to significantly reduce the price of its My Cinema Lightbox products.  Id.

Some months later, ONE11 discovered that Nuop was offering its products through Groupon, using photographs of My Cinema Lightbox products in its offer.  Id. ¶ 18.  Again,

ONE11 recognized the product as its own because because the fonts and symbols shown in the Groupon offer were the ones developed by ONE11.  Id.; Banyai Decl. Ex. 2.

### ONE11 Takes Steps to Protect its Mark

In an effort to prevent Nuop's knockoffs from reaching the market, ONE11 confronted the Chinese factory that supplied the My Cinema Lightbox product.  Id. ¶ 19.  Upon learning that Nuop had co-opted ONE11's brand, the factory agreed that ONE11 would be the exclusive agent or distributor for North America and all sales inquiries and orders would, from that point on, go through ONE11.  Id.  ONE11 placed its next order directly with the factory.  Id.

In addition, ONE11 promptly consulted counsel in an effort to stop Nuop from taking and using its property.  Id. ¶ 20.  ONE11 also alerted ONE11's major retailers that Nuop was improperly distributing knockoff products and infringing on ONE11's intellectual property.  See Banyai Decl. Ex. 3.  On July 7, 2016, through counsel, ONE11 sent a cease-and-desist letter to Nuop alleging trademark infringement and passing off.  See Banyai Aff. Ex. 4.  Nuop never responded.

### Nuop's Unfair Competition Persists

In July 2016, ONE11 was an exhibitor at a trade show in Atlanta named AmericasMart Home & Gift Show.  Id. ¶ 23.  ONE11 arrived days in advance to prepare its trade show booth display.  Id.  Because of the broad reach of this trade show and the potential to generate significant interest in ONE11's product, ONE11 expended time and resources publicizing My Cinema Lightbox at the show, purchasing advertising in the form of brochures and podium stands.  Id.

ONE11 also developed the look and feel of its trade show booth.  Id. ¶ 23.  Specifically, because the My Cinema Lightbox brand was inspired by old-fashioned movie theater displays,

ONE11 adopted a distinctive display including mounting the My Cinema Lightbox products on black walls surrounded by a white vinyl border and letters.  Id. Ex. 5.  ONE11 also chose distinctive sayings and phrases for the My Cinema Lightbox examples on display, such as "YES I CAN." Id.

On the day before the show was to open to the public, Nuop arrived at the trade show, surveyed ONE11's booth and then purchased materials to copy ONE11's booth design.  Id. ¶ 24. The similarities were striking – Nuop mounted its product on black foam core walls, with white letters on them.  Id. Ex. 6.  Nuop also copied the size descriptions of the product that ONE11 used, changing the size designations from "A4," "A5," and "A3" to "Large," "Small," and "Mini." Id. ¶ 25. Prominently displayed on Nuop's booth was the name it had selected for its product: "My Marquee Lightbox."  Id. ¶ 24.  Nuop's copycat booth was set up just two booths in front of ONE11's booth.  Photographs of Nuop's booth at the Atlanta trade show are here:

**Nuop Causes Customer Confusion**

As a result of Nuop's conduct, customers at the Atlanta trade show confused Nuop with ONE11.  Id. ¶ 26.  A number of customers ordered lightboxes from Nuop and, when they saw ONE11's display and realized their confusion and mistake, cancelled their Nuop orders and placed orders for My Cinema Lightbox instead.  Id.

For example, a buyer from a company called Love Street approached ONE11 at the Atlanta trade show with ONE11's advertisement in hand, asking if ONE11 sold My Cinema Lightbox.  Id. ¶ 27.  She informed ONE11 that she had seen its advertisement, but had just mistakenly placed an order with Nuop.  Id.  The buyer explained that she walked by Nuop's booth first, believed it was ONE11's product, and placed the order through Nuop.  Id.  When

ONE11's representatives explained that ONE11 was, in fact, the originator of the product, the Love Street buyer cancelled the order with Nuop.  Id.

In addition, other trade show attendees approached ONE11 to inquire about its advertising, and did not realize that Nuop was a different company; these customers operated on the assumption that ONE11 and Nuop were affiliated, or the same business.  Id. ¶ 28.  At least one customer stated that she realized that there were some packaging differences, but believed that Nuop was associated with ONE11 because Nuop used "My" and "Lightbox" in the name of its product.  Id.

Once again, ONE11 confronted Nuop.  At first, Nuop claimed to have no knowledge of who created the name "My Marquee Lightbox" – notwithstanding Ms. Banyai's prior interactions with them and ONE11's cease and desist letter, Nuop claimed that it did not know ONE11 existed.  Id. ¶ 29.

In an effort to avoid a legal dispute, ONE11 asked Nuop to rebrand its remaining inventory.  Id. ¶ 30.  ONE11 submitted a proposal and even offered to refrain from exhibiting at the Javits Center's then-upcoming NYNOW trade show.   See Banyai Aff. Ex. 7.  Despite ONE11's repeated follow-up efforts, Nuop never responded to this proposal.  Id. ¶ 30.

**Nuop Causes Additional Confusion at Trade Shows in Toronto and Las Vegas**

Nuop's conduct worsened in August 2016.   At the Toronto Gift Fair, ONE11 discovered a Canadian distributor selling Nuop's products.  Id. ¶ 31.  This distributor told ONE11 that Nuop had represented that Nuop could sell the products in Canada and there was no competition or legal issues with doing so.  Id.

Customers at this trade show, too, confused My Cinema Lightbox and My Marquee Lightbox. For example, Shari Bricks Zeiler, the owner of a retailer named Toy Town, visited the

ONE11 booth after having just visited the Canadian distributor's booth, where she saw My Marquee Lightbox on display.  Id. ¶ 32.  She mentioned that she had seen ONE11's Instagram postings, and intended to place an order for My Cinema Lightbox, but realized she had purchased from the wrong company and the wrong product after visiting ONE11's booth. Id.  She decided to cancel her order for the My Marquee Lightbox and place an order with ONE11; however, she required ONE11 to reduce its prices to match the knock-off product's price.  Id.

In August, ONE11 was an exhibiter at the Las Vegas World Markets Gift Show.   Id. ¶ 33.  ONE11's booth was, again, in close proximity to Nuop's booth.  Id.   As in Atlanta, ONE11 employees arrived first and set up its booth display; ONE11 utilized the same distinctive composition and design as it had in Atlanta, in order to bolster its brand recognition.  See Banyai Aff. Ex. 8.   ONE11 also purchased advertisements in the trade show materials.  When Nuop arrived the day before the show, it again copied ONE11's booth design – this time, reversing the color scheme.   See Banyai Aff. Ex. 9.  Nuop even went so far as to copy phrases ONE11 had displayed on its products, such as "YES I CAN."  Id.

As in Atlanta and Toronto, customers were confused and ordered lightboxes from Nuop's booth, only to cancel those orders and order from ONE11 when they realized their mistake.  Id. ¶ 34.  For example, Mary Liz, the owner of a retailer named Lulu & Leon, visited the ONE11 booth in Las Vegas, and informed ONE11's representatives that she had seen ONE11's advertisement in the trade show materials, but had accidentally placed an order with Nuop.  Id. ¶ 35.  When ONE11's representatives explained Nuop's conduct and assured the customer that ONE11 was the originator of My Cinema Lightbox, the customer emailed Nuop and cancelled her order.  Id.

**Despite ONE11's Efforts, Nuop's Unfair Conduct Continues**

In late August, at the NYNOW trade show at the Javits Center, ONE11 discovered Nuop showing its knockoff products at its booth.  Id. ¶ 36.  When confronted, Nuop said it would follow up on ONE11's earlier proposals to rebrand its product, and would contact ONE11 about resolving the matter amicably.  Nuop still has failed to reply to ONE11's proposals.

Instead, Nuop continues to sell its knockoff product to retailers at unreasonable margins, capitalizing on ONE11's brand recognition while undercutting ONE11's ability to maintain its customer base.  Id. ¶ 37.  Moreover, ONE11's efforts to correct customers' mistaken belief that Nuop's My Marquee Lightbox is somehow associated with, or identical to, My Cinema Lightbox are ongoing; to date, ONE11 has been contacted by at least five such customers.  Id.

## ARGUMENT

To prevail on a motion for a preliminary injunction, a plaintiff must show (1) irreparable harm, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in plaintiff's favor.  Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005) (quoting Federal Express Corp. v. Federal Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000)).

Courts in this Circuit routinely grant preliminary injunctions in cases involving the types of claims asserted here.  See, e.g., Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 1006 (2d Cir. 1997) (affirming grant of preliminary injunction where plaintiff's trade dress is inherently distinctive and defendant's copying created substantial likelihood of confusion); Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 240 (2d Cir. 2009) (affirming grant of preliminary injunction prohibiting defendant from offering goods infringing on plaintiff's

trademark); Tactica Int'l, Inc. v. Atlantic Horizon Intern., Inc., 154 F.Supp.2d 586, 609 (S.D.N.Y. 2001) (enjoining defendants from infringing plaintiff's mark to sell beauty products).

ONE11 easily makes the required showing for the grant of preliminary injunction here.

## I.      ONE11 IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

### A.      ONE11 Is Likely To Succeed On Its Trademark Infringement Claims

To succeed on a Lanham Act trademark infringement claim, plaintiff must demonstrate that (1) the trademark is valid and entitled to protection, and (2) defendant's use of the trademark is likely to cause consumer confusion as to the origin, affiliation or association, or endorsement of defendant's goods or services.  Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 216-17 (2d Cir. 2012).  ONE11 makes both of these showings.

#### 1.      *ONE11's Trademark is Valid and Entitled to Protection*

Although ONE11's trademark application to register its mark My Cinema Lightbox is currently under review at the PTO, it is axiomatic that unregistered marks are entitled to protection under Section 43(a) of the Lanham Act.[1]  See Silberstein v. Fox Entertainment Group, Inc., 424 F.Supp.2d 616, 632 (S.D.N.Y. 2004) (noting that section 43(a) "creates a cause of action for infringement of unregistered []marks"); see also Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) ("[It] is common ground that section 43(a) protects qualifying unregistered trademarks").

---

[1] Section 43(a) imposes liability on anyone who,

> on or in connection with any goods . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin. . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person.

15 U.S.C. § 1125(a).

"An unregistered mark is entitled to protection if it qualifies for registration."  Courtenay Comms. Corp. v. Hall, 334 F.3d 210, 217 (2d Cir. 2003); see also Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210 (2000) ("[T]he general principles qualifying a mark for registration under § 2 of the Lanham Act [governing trademark registration] are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." (citation omitted)).  In this regard, it is important to note that the PTO examining attorney raised no objection to the distinctiveness of ONE11's mark.   "The strength of a trademark in the marketplace and the degree of protection it is entitled to are categorized by the degree of the mark's distinctiveness in the following ascending order: generic, descriptive, suggestive, and arbitrary or fanciful."  Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 1075 (2d Cir. 1993) (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976)).

Here, ONE11's mark My Cinema Lightbox is, at the very least, suggestive.  A suggestive mark is one that uses names in a creative way to suggest the nature of the product.  See Winner Int'l LLC v. Omori Enters., Inc., 60 F.Supp.2d 62, 67 (E.D.N.Y 1999). A suggestive mark "requires imagination, thought and perception to reach a conclusion as to the nature of the goods." Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1040 (2d Cir. 1992) (internal quotations and citation omitted); see also Tactica Inter., Inc. v. Atlantic Horizon Intern., Inc., 154 F.Supp.2d 586, 599 (S.D.N.Y. 2001) ("Examples of suggestive marks include . . . CHEW'N CLEAN dentifrice . . . HANDI WIPES dusting cloths, and SPRAY'N'VAC aerosol rug cleaner.") Here, the mark My Cinema Lightbox evokes the suggestion of a movie theater marquee, but a consumer must nonetheless use "imagination" to determine the nature of the product itself.

Marks that are suggestive are considered "inherently distinctive," and are automatically entitled to protection under the Lanham Act.  See Two Pesos, 505 U.S. at 768; see also Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 344 (2d Cir. 1999) ("Fanciful, arbitrary, and suggestive marks are deemed inherently distinctive. Their intrinsic nature serves to identify a particular source of a product, so they will be automatically protected.").  Accordingly, My Cinema Lightbox is entitled to protection under the Lanham Act.

2.    *Defendant's Bad Faith Copying of ONE11's Mark is Presumed to Cause Confusion, and Has Actually Caused Consumer Confusion*

To prevail in a trademark infringement action under the Lanham Act, a plaintiff must prove, in addition to protectability of the mark, that "defendant's use of a similar mark is likely to cause consumer confusion."  Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 115 (2d Cir. 2006).  "Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification."  Guinness United Distillers & Vitners B.V. v. Anheuser-Busch, Inc. 64 U.S.P.Q. 1039, 1041 (S.D.N.Y. 2002) (citing McDonald's Corp. v. McBagel's, Inc., 649 F.Supp. 1268, 1273 (S.D.N.Y. 1986)).  The facts underlying this lawsuit definitively and unequivocally establish a likelihood of confusion.

As courts have consistently held, where a defendant adopts a similar mark in bad faith and intentionally copies a trademark, a likelihood of confusion is presumed as a matter of law. See Paddington Corp. v. Attiki Importers & Distribs, Inc., 996 F.2d 577, 586-87 (2d Cir. 1993) ("Where a second-comer acts in bad faith and intentionally copies a trademark . . . a presumption arises that the copier has succeeded in causing confusion."); Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp., 97 F.Supp.3d 485, 496-97 (S.D.N.Y. 2015) (holding that "[t]he evidence demonstrates that Sunny intentionally attempted to appropriate the ubiquitous LOUIS

14

VUITTON mark through the use of its confusingly similar LOUIS V and LOUIS VALENTIN marks . . . gives rise to a presumption in favor of a likelihood of confusion.").

There is no question here that Nuop's use of the name "My Marquee Lightbox" was deliberately chosen for its striking similarity to My Cinema Lightbox – a product that had achieved market exposure and recognition before Nuop presented its competing product.   In short, Nuop deliberately copied ONE11's mark in order to capitalize on its goodwill and successful branding strategy.  See Am. Home Prods. Corp. v. Johnson Chem. Co., 589 F.2d 103, 107 (2d Cir. 1978) ("[O]ne who adopts the mark of another for similar goods acts at his own peril and any doubt concerning the similarity of the marks must be resolved against him.") (internal citation omitted)).  These acts, as well as Nuop's deliberate use of photographs of My Cinema Lightbox products in a Groupon offer for its own product, and its continued use of its infringing mark even after receiving ONE11's cease and desist letter unquestionably constitute bad faith.  See, e.g., Simon & Schuster, Inc. v. Dove Audio, Inc., 970 F.Supp. 279, 299-300 (S.D.N.Y. 1997) (finding "intentional copying of plaintiff's marks in bad faith" in light of "evidence that Dove copied plaintiffs' mark . . . in order to capitalize on plaintiffs' success and the goodwill associated with plaintiffs' mark); Stuart v. Collins, 489 F.Supp. 827, 832 (S.D.N.Y. 1980) (finding willful infringement where defendant continued to use plaintiff's mark after receiving a cease and desist letter "out of arrogance and confidence that he would not mount any significant legal attack").

For this reason, even if ONE11 could not show actual confusion among consumers, a likelihood of confusion would be presumed as a matter of law.  See N.Y. State Society of Cert. Public Accountants v. Eric Louis Assocs., Inc., 79 F.Supp.2d 331, 340 (S.D.N.Y. 1999) (where the trademark infringement is the result of intentional copying, "likelihood of confusion will be

presumed as a matter of law"); GTFM., Inc. v. Solid Clothing Inc., 215 F.Supp.2d 273, 297 (S.D.N.Y. 2002) (where similarities "are so strong that they could only have occurred through deliberate copying . . . a presumption arises that the copier has succeeded in causing confusion"); Toys "R" Us Inc. v. Abir, 45 U.S.P.Q.2d (BNA) 1944, 1947 (S.D.N.Y. 1997) ("likelihood of confusion presumed as a matter of law when defendant intentionally copies plaintiff's trademark").

Moreover, there is abundant evidence that Nuop's efforts to copy ONE11's mark has caused actual confusion among consumers. As described in detail herein, ONE11 has been approached by numerous customers who had mistakenly placed orders with Nuop, believing that the My Marquee Lightbox was, in fact, My Cinema Lightbox. In short, Nuop's use of a confusingly similar name for its virtually identical product, coupled with copying trade show booths and using ONE11's products in promotional displays, has had exactly the effect Nuop intended: consumers seeking out ONE11's product are instead drawn to Nuop's product. This evidence of actual confusion "strongly supports a finding of likelihood of confusion." Am. Ort, Inc. v. Israel, No. 07 CV 2332, 2007 WL 20449733, at *8 (S.D.N.Y. July 17, 2007) (holding that actual confusion factor weighed in favor of plaintiff when "at least one of Plaintiff's donors has already been confused by Defendant's use of the ORT mark").

3.     *The Polaroid Factors Militate in Favor of ONE11*

Because a likelihood of confusion is presumed as a matter of law, it is not necessary to analyze the factors set forth in Polaroid Corp. v. Polaroid Elecs. Corp., 287 F.2d 492 (2d Cir. 1961), which include (1) the strength of the mark; (2) the degree of similarity between the marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) bad faith; (7) the quality of defendant's product; and (8) the sophistication

of buyers.  But, even if it were, the <u>Polaroid</u> factors also strongly support a finding of likelihood of confusion here.

First, as discussed herein, My Cinema Lightbox is a strong, inherently distinctive mark. Second, Nuop's My Marquee Lightbox is extraordinarily similar to My Cinema Lightbox – two of the three words are identical, and the third word is closely related.  The proximity factor "focuses on whether the two products compete with each other.  To the extent goods . . . serve the same purpose, the use of similar designations is more likely to cause confusion."  <u>Savin Corp. v. Savin Group</u>, 391 F.3d 439, 458 (2d Cir. 2004).  The fourth factor is inapplicable, as the gap is already bridged where the products at issue are directly competitive.  <u>See, e.g.</u>, <u>Starbucks Corp. v. Wolfe's Borough Coffee, Inc.</u>, 588 F.3d 97, 115 (2d Cir. 2009) (noting that "the 'bridging the gap' factor is irrelevant . . . where, as here, the two products are in direct competition with each other.").  As discussed, because ONE11 has presented evidence of actual confusion among consumers, the fifth factor weighs heavily in favor of a likelihood of confusion. <u>See</u> <u>Savin Corp.</u>, 391 F.3d at 459 ("There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion."). The sixth factor considers whether Nuop adopted the My Marquee Lightbox name "with the intention of capitalizing on [the] plaintiff's reputation and goodwill and [on] any confusion between his and the senior user's product." <u>Id.</u>  As discussed above, the facts strongly suggest that Nuop adopted the name My Marquee Lightbox after learning about My Cinema Lightbox, in order to ride the coattails of ONE11's branding success; accordingly, the sixth <u>Polaroid</u> factor favors ONE11.  The quality of Nuop's product is not at issue here.  Finally, because the products at issue are relatively inexpensive goods, the relevant consumers are presumed to be more susceptible to confusion. <u>See</u> <u>Friesland Brands, B.V. v. Vietnam Nat. Milk Co.</u>, 228 F.Supp.2d 399, 411 (S.D.N.Y. 2002)

(purchasers of relatively inexpensive products are held to "lesser standard of purchasing care"); see also Morningside Grp. Ltd. v. Morningside Capital Grp., LLC, 182 F.3d 133, 143 (2d Cir. 1999) ("[W]hen as here, there is a high degree of similarity between the parties' services and marks, the sophistication of the buyers cannot be relied on to prevent confusion.").  Accordingly, this factor also favors a likelihood of confusion.

In sum, the Polaroid factors make clear that there is a strong likelihood of confusion in this case.  For this reason, ONE11 has a strong likelihood of success on its claims for trademark infringement under Section 43(a).[2]

B.      ONE11 Is Likely To Prevail On Its Unfair Competition Claims

ONE11 is also likely to succeed on its claim for unfair competition under both the Lanham Act and New York law.  It is well recognized that the standards for Section 43(a) claims of the Lanham Act and unfair competition claims under New York Law are almost indistinguishable.  See, e.g., Kregos v. Associated Press, 795 F.Supp. 1325, 1336 (S.D.N.Y. 1992), aff'd, 3 F.3d 656 (2d Cir. 1993). "The essence of a claim for unfair competition under New York law is that the defendant has misappropriated the labors and expenditures of another in a manner likely to cause confusion or to deceive purchasers as to the origin of the goods." Innovation Ventures, LLC v. Ultimate One Dist. Corp., --- F.Supp.3d ----, 2016 WL 1273232 (E.D.N.Y. Mar. 31, 2016).  "In order for Plaintiffs to succeed in demonstrating unfair competition under both the Lanham Act and the common law, Plaintiffs must show a likelihood of confusion or deception of the consuming public as to the source of the allegedly infringing

---

[2] ONE11 also asserts a claim for trademark infringement under New York common law.  Because the elements of this cause of action parallel those under the Lanham Act, ONE11 is also likely to succeed on its state law claim.  See Ritani LLC v. Aghjayan, 880 F.Supp.2d 425, 448 (S.D.N.Y. 2012) ("[T]he elements of a cause of action for New York common law infringement . . . mirror the requirements of claims stated under the Lanham Act and similarly require that a party demonstrate a valid, protectable mark and a likelihood of confusion between the marks of the alleged infringer and the charging party.").

product, *and* bad faith on the part of Defendants." <u>Tri-Star Pictures, Inc. v. Unger</u>, 14 F.Supp.2d 339, 363-64 (S.D.N.Y. 1998).  "Proof of secondary meaning, however, is not required."  <u>Id.</u>

As discussed in section I.A.2, ONE11 has demonstrated that Nuop's use of My Marquee Lightbox creates a likelihood of confusion.  Its copying of the look and feel of ONE11's trade show booths also creates a likelihood of confusion.  Moreover, Nuop's use of ONE11's products in its trade show booth, its adoption of a confusingly similar name, its use of pictures of ONE11's product in Nuop's Groupon offer, and its presenting a virtually identical display at its trade shows demonstrates its bad faith.  Nuop was not only aware of ONE11's branding efforts, it took deliberate steps to copy them – even after being instructed by ONE11's counsel to cease and desist.  It intended to cause consumers to believe the parties and their products are associated or authorized by one another.  <u>Centaur Comm's, Ltd. v. A/S/M Comm's, Inc. 830 F.2d 1217, 1228 (2d Cir. 1987)</u> ("[A]wareness [that a mark is in use] can give rise to an interference of bad faith."); <u>Philip Morris USA Inc. v. Felizardo</u>, No. 03-cv-5891, 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004) ("[T]he evidence [plaintiff] proffers to demonstrate [defendant's] *intentional* use of the counterfeit marks ... also serves to establish [defendant's] bad faith under New York common law") (emphasis added).

Accordingly, ONE11 is likely to prevail on its claims for unfair competition under the Lanham Act and New York common law.

C.   <u>ONE11 Is Likely To Prevail On Its Trade Dress Infringement Claims Under New York Law</u>

Nuop's unlawful conduct also constitutes trade dress infringement under New York law. "The concept of trade dress encompasses the design and appearance of the product together with all the elements making up the overall image that serves to identify the product presented to the consumer.  These other elements include the other materials used in presenting the product to

prospective purchasers." Fun-Damental Too, Ltd. v. Gemmy Indust. Corp., 111 F.3d 993, 999

(2d Cir. 1997) (quoting REST. (THIRD) OF UNFAIR COMPETITION § 16 (1995)).

      "In order to prevail in an action for trade dress infringement in New York, a plaintiff

must prove (1) that its trade dress is distinctive . . . ; and (2) that a likelihood of confusion exists

between its product and the defendant's product." Carson Optical, Inc. v. Prym Consumer USA,

Inc., 11 F.Supp.3d 317, 335 (E.D.N.Y. 2014).   Because "the possible varieties of advertising

display . . . are virtually endless," courts routinely find that a trade dress is inherently distinctive,

"and the only real question for the courts will be whether there is a likelihood of confusion

between the products." Paddington Corp. v. Attiki Importers & Distributors, Inc., 99 F.2d 577,

583 (2d Cir. 1993).

      In this case, ONE11 developed the distinctive look and feel of its trade show booths,

which display its My Cinema Lightbox products mounted on black hand-painted walls

surrounded by white vinyl letters and borders.   Of the "virtually endless" display options

available to in designing its own display booth, Nuop chose *identical elements* after seeing

ONE11's trade show booth.   Nuop deliberately copied – word for word – the phrases ONE11

displayed on the My Cinema Lightboxes in its booth.   Nuop also deliberately copied the size

designations ONE11 selected – renaming the A4, A5, and A3 "Large," "Small," and "Mini."

This intentional copying of ONE11's trade dress had the exact effect Nuop desired:  customers at

the trade shows were confused, and some mistakenly ordered Nuop's product instead of My

Cinema Lightbox.  See, e.g., Perfect Fit Indust., Inc. v. Acme Quilting Co., Inc., 618 F.2d 950,

954 (2d Cir. 1980) ("If there was intentional copying the second comer will be presumed to have

intended to create a confusing similarity of appearance and will be presumed to have

succeeded.").

In short, Nuop's copying of ONE11's trade show booths is likely to cause confusion and thus ONE11 is likely to prevail on this claim.

D.    ONE11 Is Likely To Prevail On Its Claim Under The New York Dilution Statute

In addition, Nuop's use of My Marquee Lightbox, which is substantially similar to My Cinema Lightbox, violates the New York dilution statute, N.Y. Gen. B. L. § 360-l (1996)**.**  The New York statute provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be grounds for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

N.Y. Gen. Bus. L.§ 360- l.  An analysis of New York dilution requires consideration of (i) the distinctive nature of the senior mark and (ii) whether blurring is likely to occur.  See e.g., GTFM, Inc. v. Solid Clothing, Inc., 215 F.Supp.2d 273, 301 (S.D.N.Y. 2002) (finding dilution likely under New York statute where marks "are highly similar, as are the products to which their respective designations are affixed"); Nike Inc. v. Top Brand Co. Ltd., No. 00 Civ. 8179 (KMW)(RLE), 2005 WL 1654859, at *9 (S.D.N.Y. Jul. 13, 2005) (granting summary judgment to plaintiffs on New York state dilution claim).[3]

Blurring occurs "where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product."  Deere & Co. v. MTD Products, Inc., 41 F.3d 39, 43 (2d Cir. 1994).  "Blurring is 'the whittling away of the established

---

[3] Significantly, "[u]nlike federal trademark dilution law, however, New York's trademark dilution law does not require a mark to be 'famous' for protection against dilution to apply."  Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009). "Nor are the factors that are considered for determining dilution by blurring under New York law coextensive with the factors for determining dilution by blurring under federal law."  Id.

trademark's selling power and value through its unauthorized use by others.'"  Bath and Body Works Brand Mgmt., Inc. v. Summit Enter., LLC, 7 F.Supp.3d 385, 399 (S.D.N.Y. 2014).

"To determine the likelihood of blurring, we have looked to six factors, including: (i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark."  New York Stock Exchange, Inc. v. New York, New York Hotel LLC, 293 F.3d 550, 558 (2d Cir. 2002).

These factors have been discussed at length herein.  In short, Nuop's use of name that is substantially similar to the distinctive My Cinema Lightbox mark compromises ONE11's brand and blurs the mark's unique identification of ONE11's products.

## II.     ONE11 WILL CONTINUE TO SUFFER IRREPARABLE HARM IF NUOP IS NOT ENJOINED

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009).

> Although irreparable harm may not be presumed upon a showing of a likelihood of success, irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark because loss of control over one's reputation is neither calculable nor precisely compensable.  Thus, it will often be the case that a party's demonstration of a likelihood of success on a trademark claim will also show a threat of irreparable harm.

NYP Holdings v. New York Post Pub. Inc., 63 F.Supp.3d 328, 341 (S.D.N.Y. 2014) (internal quotations and citations omitted).

Absent an injunction, ONE11 will continue to suffer irreparable harm to its business and reputation.  The loss of customers will have a disproportionate impact on ONE11, a start-up business striving to grow its client base and expand its goodwill.  N.Y. City Triathlon v. NYC

Triathlon Club, Inc., 704 F.Supp.2d 305, 343 (S.D.N.Y. 2010) ("[p]rospective loss of ... goodwill alone is sufficient to support a finding of irreparable harm." (citing Tom Doherty Assoc. v. Saban Entm't, Inc., 60 F.3d 27, 37–38 (2d Cir.1995)). Moreover, the number of customers who have expressed confusion as a result of Nuop's unfair conduct understates the impact on ONE11's goodwill; there are undoubtedly other customers who mistakenly purchased from Nuop, and never realized their mistake.  See Marks Org., Inc. v. Joles, 784 F.Supp.2d 322, 335 (S.D.N.Y. 2011) ("[W]here the likelihood of confusion is so high, it is impossible to disaggregate lost good will from confusion. . . . The extreme likelihood of confusion (as well as evidence of actual confusion) makes it clear that Plaintiff has lost good will because of this confusion.").

In addition, Nuop's unauthorized use of a confusingly similar name and trade dress severely hinders ONE11's ability to ensure that consumers associate its mark with a quality product.  N.Y. City Triathlon v. NYC Triathlon Club, Inc., 704 F.Supp.2d 305, 325 (S.D.N.Y. 2010) (holding that plaintiff established irreparable harm where "Defendant [was] not only trading on Plaintiff's earned goodwill, but also [was] taking from Plaintiff the ability to control its reputation and the services offered under its name and mark."); id. at 343 Power Test Petroleum Distribs. v. Calcu Gas, Inc., 754 F.2d 91, 95 (2d Cir. 1985) (holding that irreparable harm may be found when trademark owner demonstrates that "it will lose control over the reputation of its trademark pending trial").

## III.   ONE11 HAS RAISED SERIOUS QUESTIONS ON THE MERITS OF ITS CLAIMS AND THE BALANCE OF HARDSHIPS TIPS IN ITS FAVOR

A court may issue a preliminary injunction not only where the moving party has established a likelihood of success on the merits, but also where there are "sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of

hardships tipping decidedly [in the movant's favor]," <u>Malletier v. Burlington Coat Factory</u>, 426 F.3d 532, 537 (2d Cir. 2000).  ONE11 has met this alternative standard because the balance of hardships tips overwhelmingly in its favor and, as discussed above, ONE 11 has set forth facts raising serious questions on the merits of its claims, making them fair ground for litigation.

The harm to ONE11 in the absence of an injunction vastly outweighs any potential harm to Nuop.  As noted in section II., supra, if Nuop is permitted to continue its unfair competition and infringing conduct, ONE11 will suffer irreparable harm to its brand, reputation, and business.  In contrast, if enjoined from using the name "My Marquee Lightbox" and from adopting the distinctive trade dress ONE11 uses in its trade show booths, Nuop will suffer, at most, economic costs associated with changing its name and trade booth display.  Any such harm is entirely attributable to Nuop's deliberate decision to imitate ONE11's trademark and trade dress—in short, Nuop could have avoided this lawsuit entirely if it had simply chosen another name, or another trade booth display.  <u>See, e.g.</u>, <u>Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc</u>., 698 F.2d 862, 867 (7th Cir. 1983) ("[O]ne entering a field already occupied by another has a duty to select a trademark that will avoid confusion." (quotation marks and citation omitted)).

When the movant will suffer uncompensable harm, and the defendant is harmed only economically, courts in this Circuit regularly find that the balance of hardships tips decidedly in the movant's favor.  <u>See, e.g.</u>, <u>Warner-Lambert Co. v. Northside Devel. Corp</u>., 86 F.3d 3, 8 (2d Cir. 1996).

Accordingly, this Court should enjoin Nuop from further use of its confusingly similar name "My Marquee Lightbox" and from copying ONE11's trade show booth displays.

## <u>CONCLUSION</u>

For the foregoing reasons, ONE11 respectfully requests that the Court grant its motion

for a preliminary injunction.

Dated: September 19, 2016
      New York, New York              ZEISLER PLLC

                                 /s/ Mark N. Mutterperl
                                 Mark N. Mutterperl
                                 Meghan H. Sullivan
                                 750 Third Avenue, 9th Floor
                                 New York, New York 10017
                                 (212) 671-1921

                                 *Attorneys for Plaintiff ONE11 Imports, Inc*